# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:04CV-40-M

MICHAEL F. GEIGER, LLC, et al.                          PLAINTIFFS

v.

UNITED STATES OF AMERICA, et al.                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon cross-motions for summary judgment filed by the Defendants Tennessee Valley Authority ("TVA") and the United States of America ("the government")[DN 43 & 44] and Plaintiffs Michael F. Geiger, LLC and Bill S. Gough ("the Geiger plaintiffs") [DN 45].  Having been fully briefed, the matter now stands ripe for decision.  For the reasons discussed below, the motions for summary judgment filed by TVA and the government are **GRANTED in part, and DENIED in part** while the Geiger plaintiffs' motion for summary judgment is **GRANTED in part, and DENIED in part**.

### I. BACKGROUND

The Geiger plaintiffs brought this action under the Quiet Title Act, 28 U.S.C. § 2409(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine the ownership rights to coal bed methane ("CBM") gas in approximately 27,000 acres of property located in the western Kentucky Counties of Union, Webster and Henderson, an area the government previously designated as "Camp Breckenridge."  The Geiger plaintiffs own "all the oil, gas, and all other minerals and mineral rights of every kind and character except the coal and coal

rights, in, on, or under, or which may be produced from" Camp Breckenridge tracts 2,3,4,6,7 and 8.   TVA and the government own all the "coal and coal rights" in and to the subject property.  Neither party currently extracts CBM gas from the subject property, however, each claims ownership of it.  The Plaintiffs claim that they have the exclusive right to explore for, develop, produce, market, sell and otherwise use the CBM gas from these properties. Furthermore, Plaintiffs claim exclusive ownership of the right to use the abandoned mine works under the subject property. [DN 1 at 10].  TVA claims ownership of the CBM gas within the coal strata and alternatively, contests the Plaintiff's claim regarding the use of the abandoned mine works.

## II.  LEGAL STANDARD

The summary judgment standard requires that the Court find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  The facts are largely undisputed, as the Plaintiffs and Defendants have made cross-motions for summary judgment.  Thus, the Court reviews the uncontested facts and legal arguments.

2

## III.  DISCUSSION

CBM gas has existed as long as coal has existed.  However, CBM gas development has only recently become commercially viable.  Consequently, disputes have arisen in recent years over the ownership of CBM gas.  Given the nature of CBM gas, the dispute is generally between the owner of the coal estate and the owner of the gas estate, as it is in this case.

The Supreme Court gave an overview of the composition of coal and CBM gas in Amoco Prod. Co. v. S. Ute Indian Tribe, 526 U.S. 865 (1999), which has been adopted in large part by every court handling this issue since 1999.  Justice Kennedy writing for the Majority described coal as:

> ...a heterogeneous, noncrystalline sedimentary rock composed primarily of carbonaceous materials. It is formed over millions of years from decaying plant material that settles on the bottom of swamps and is converted by microbiological processes into peat. Over time, the resulting peat beds are buried by sedimentary deposits. As the beds sink deeper and deeper into the earth's crust, the peat is transformed by chemical reactions which increase the carbon content of the fossilized plant material. The process in which peat transforms into coal is referred to as coalification.
>
> The coalification process generates methane and other gases. Because coal is porous, some of that gas is retained in the coal. CBM gas exists in the coal in three basic states: as free gas; as gas dissolved in the water in coal; and as gas "adsorped" on the solid surface of the coal, that is, held to the surface by weak forces called van der Waals forces. These are the same three states or conditions in which gas is stored in other rock formations. Because of the large surface area of coal pores, however, a much higher proportion of the gas is adsorped on the surface of coal than is adsorped in other rock. When pressure on the coalbed is decreased, the gas in the coal formation escapes. As a result, CBM gas is released from coal as the coal is mined and brought to the surface.

Amoco, 526 U.S. at 872-873 (internal citations omitted).

### A.  Ownership of CBM Gas

The issue of CBM gas ownership is one of first impression in Kentucky, but the United States Supreme Court and several state courts have ruled on it with varying results. See Amoco, 526 U.S. 865; West, 631 So.2d 212 (Ala. 1993); Cont'l Res. of Ill., Inc. v. Ill. Methane, LLC, 847 N.E.2d 897 (Ill. App. 2006); Carbon County v. Union Reserve Coal Co., 898 P.2d 680 (Mont. 1995); U.S. Steel Corp. v. Hoge, 468 A.2d 1380 (Pa. 1983); Harrison-Wyatt, LLC v. Ratliff, 593 S.E.2d 234 (Va. 2004); Energy Dev. Corp. v. Moss, 591 S.E. 135 (W.Va. 2003); Newman v. RAG Wyo. Land Co., 53 P.3d 540 (Wyo. 2002).

Despite the differing results, there is no dispute in the scientific or legal communities that CBM gas constitutes a separate and severable mineral interest in land.  See West, 631 So.2d 212, 227.  The courts which found for the coal estate owner reasoned that as long as the CBM gas is adsorped or present in the coal strata, it is under the exclusive control of the coal estate.  Hoge, 468 A.2d at 1383 (Pa. 1983);  West, 631 So.2d at 225; Cont'l Res. of Ill., 847 N.E.2d at 902.  These courts, however, following the "capture rule,"[1] also found that any CBM gas that escaped the coal strata may be captured by the gas estate holder.  Hoge, 468 A.2d at 1383;  West, 631 So.2d at 224.  The courts which ruled in favor of the gas estate owners generally found that the gas estate holders have the exclusive rights to drill for and produce CBM gas wherever it may be found, even if adsorped to coal in the coal seam.

---

[1] All jurisdictions which have ruled on CBM gas ownership adhere to the capture rule with the exception of Montana in Carbon County v. Union Reserve Coal Co. 898 P.2d 680 (Mont. 1995) which is an "ownership in place" jurisdiction.  The capture rule gives the gas estate owner a right to capture and reduce to possession any gas.  The ownership in place rule gives the gas estate ownership of gas in its place, in the ground or otherwise.

<u>Carbon County</u>, 898 P.2d 680; <u>Ratliff</u>, 593 S.E.2d 234; <u>Newman</u>, 53 P.3d 540.

All of the courts which have grappled with this issue focused on the meaning of the contract language used to create the mineral interest.  Using this same approach, the Court easily concludes that the Plaintiffs own the CBM gas estate.   In  <u>Sellars v. Ohio Valley Trust Co.</u>, 248 S.W.2d 897, 899 (Ky.1952), the Kentucky Supreme Court held that when an instrument uses the term "minerals" without qualification, it is construed as conveying all organic and inorganic substances that can be taken from the earth.  The Plaintiffs were granted "all the oil, gas, and all other minerals and mineral rights of every kind and character except the coal and coal rights, in, on, or under, or which may be produced from" the subject property. [DN 1 at 4-5].   The only exception contained in the mineral interest grant to Plaintiffs is the "coal and coal rights" in and to the subject property.

TVA concedes that the Plaintiffs have the right to capture and reduce to possession and ownership CBM gas which has migrated out of the coal strata.  However, the more difficult question raised here is whether the Plaintiffs have that same right to CBM gas still within the coal strata.  TVA frames the question in this manner: (1) whether the gas estate owner has the right to capture CBM gas in coal strata, and if so, (2) whether the coal estate owner nevertheless has the right to reduce to possession and ownership CBM gas captured in connection with coal mining.

TVA maintains that if the CBM gas is in the coal when it is captured, it belongs to the coal estate owner. However, the Court is of the opinion that the gas estate owner has the right to capture CBM gas still within the coal strata.  First, there is no indication in any of the

documents in question that CBM gas was intended to be included as a part of "coal and coal rights." Like the reservation in <u>Amoco</u>, the reservation of coal here occurred well before the profitability of CBM gas was contemplated.   In <u>Amoco</u>, the Supreme Court found that since CBM was not contemplated as a valuable commodity at the time, "the most natural interpretation of 'coal' as used in the 1909 and 1910 Acts does not encompass CBM gas," but instead most likely means "solid fuel resource." <u>Amoco</u>, 526 U.S. at 874, 880.  The reservation here also includes "coal rights" but the same reasoning would apply.  Secondly, Kentucky law recognizes the rule of "capture" as have many of the other courts considering this issue.   Under Kentucky's version of the capture rule, an owner of a gas estate has the right to capture and reduce to possession the gas, but does not own it in its place.  <u>Sellars</u> 248 S.W.2d at 900.  In Kentucky, the gas estate owner

> does not own the oil and gas in the sense that he owns the surface or the solid minerals. His ownership is limited to the exclusive legal right to explore and, if oil or gas should be found, to reduce the same to possession and ownership. Until that is done, the oil and gas might escape and be captured by another from wells on other premises. But he has the right to exclude all others from attempting to exercise the right on his premises.

<u>Sellars</u> 248 S.W.2d at 900.

CBM gas is a separate and severable mineral interest in land.  Kentucky law allows for the capture of similar type minerals wherever they can be found.  Therefore, the Court concludes that the Geiger plaintiffs have the right to capture and reduce to possession CBM gas which is still within the coal strata.

The next question is whether TVA, as the coal estate owner, has the right to reduce

to possession and ownership CBM gas which is captured as a result of the coal mining process.  Historically, TVA argues, CBM gas has been controlled by the owner of the coal estate.  TVA claims that its right to capture and vent CBM during coal mining necessarily includes the right to reduce the gas to possession and ownership.  The Court disagrees.

TVA obviously has the right to capture and vent CBM gas but this right does not equate to ownership of the gas.  TVA makes some solid policy arguments related to waste and the environment in arguing for a rule which would allow a coal owner to market CBM gas rather than vent it into the atmosphere.   However, the Court does not make policy decisions.  The Kentucky General Assembly has enacted legislation "in order to encourage and ensure the fullest practical safe recovery of both coal and coalbed methane" and the Court must believe that the state will regulate the recovery of CBM gas in a manner sufficient to address the concerns raised by TVA.  In any event, such considerations do not change the fact that TVA does not own the rights to the CBM gas.

TVA also argues the difficulties of administering split mineral estates, but there is no reason to be "more concerned about the creation of a split coal/CBM gas estate than the creation of a split gas estate."  Amoco, 526 U.S. at 880.  As noted by the Supreme Court in Amoco,

> [i]t may be true, nonetheless, that the right to mine the coal implies the right to release gas incident to coal mining where it is necessary and reasonable to do so. The right to dissipate the CBM gas where reasonable and necessary to mine the coal does not, however, imply the ownership of the gas in the first instance. Rather, it simply reflects the established common-law right of the owner of one mineral estate to use, and even damage, a neighboring estate as necessary and reasonable to the extraction of his own minerals.

7

Id. at 878-879.

It would seem logical to expect the owner of the CBM gas to negotiate some sort of financial arrangement with the coal producer to allow for the marketing of the gas rather than its waste. Such an arrangement would address the environmental concerns as well. However, in the absence of such an agreement, TVA does not possess the right to reduce the CBM gas captured during the mining process to possession and ownership.

**B. Exclusive Right to Underground Voids**

The Geiger plaintiffs seek to have the Court declare that they have the exclusive right to capture CBM gas in the voids of the abandoned mine works. Plaintiffs also argue that they are the entitled to exercise sole and exclusive dominion over the underground mine voids. Plaintiffs contend that any notion that TVA or Peabody owns the CBM gas in the void space is contrary to the law of capture. The Court agrees for the reasons previously set forth in this opinion. However, the Court does not agree that the Plaintiffs have exclusive dominion over the underground mine voids.

The Plaintiffs argument in this regard is based on their assertion that the mine works have been abandoned. TVA has submitted an affidavit disputing the contention that there has been an abandonment of the mine works. This raises a question of fact sufficient to warrant denial of the Plaintiffs' motion on this point. Instead, the Court is of the opinion that TVA is entitled to summary judgment as a matter of law. Coal owned by TVA and the government remains under the subject property. According to Middleton v. Harlan-Wallins Coal Corp., 66 S.W.2d 30 (Ky. 1933), TVA retains the right to utilize the underground voids

8

and mine works for all lawful purposes.  The Plaintiffs have failed to raise a genuine issue of fact that the current use or future use of the old mine works is inconsistent with the recovery of coal from the subject property.

For these reasons, the Court denies that portion of Plaintiffs' motion for summary judgment seeking a declaration that Plaintiffs are entitled to exclusive dominion and control over the underground mine voids.  TVA's motion for summary judgment on this point is granted.  While the Plaintiffs do not have exclusive dominion and control over the mine voids, under the capture rule, they have the exclusive right to capture the CBM gas that is found within the voids.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment filed by Plaintiffs Michael F. Geiger, LLC and Bill S. Gough  [DN 45] is **GRANTED in part and DENIED in part** and the motions for summary judgment filed by TVA and the government [DN 43 & 44] are **GRANTED in part, and DENIED in part.**

CC: Counsel of Record

U:\documents\GeigerCSMJ2.wpd